UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

JAMES L. SPOOR and                                    Case No. DK 08-06061
JOY E. SPENCER-SPOOR,                                 Hon. Scott W. Dales
d/b/a SPENCER FUNERAL HOME,                           Chapter 7

            Debtors.
_____/

MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
            Chief United States Bankruptcy Judge

## I.  INTRODUCTION

Quite literally, the $64,000 question before the court is whether to rescind a sale order on the grounds that a new bidder is willing to pay more -- precisely $64,000 more -- than the winning bidder following a courtroom auction.  For reasons that follow, the court will adhere to its original decision authorizing the chapter 7 trustee to sell to the bidder who prevailed at the auction.

## II.  JURISDICTION

The United States District Court for the Western District of Michigan has jurisdiction over the chapter 7 case of James L. Spoor and Joy E. Spencer-Spoor (the "Debtors") pursuant to 28 U.S.C. § 1334(a), and has referred the Debtors' case, and all related proceedings, to the United States Bankruptcy Court pursuant to 28 U.S.C. § 157(a) and W.D. Mich. L.Civ.R. 83.2(a).  Today's contested matter, involving the sale of property included within the Debtors' bankruptcy estate, is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(N), which

the court may finally resolve notwithstanding the constitutional concerns expressed in *Stern v. Marshall*, __ U.S. __, 131 S. Ct. 2594 (2011), and its progeny.

Finally with respect to jurisdiction and authority, the court is satisfied that the Debtors have standing to file their motion, given its potential impact on the reduction in priority (and non-dischargeable) tax debts. They have a pecuniary interest in the sale.

## III. ANALYSIS

Originally with the cooperation of the Debtors, chapter 7 trustee Stephen L. Langeland (the "Trustee") arranged for a sale of the real and personal property used in connection with the Debtors' funeral home (the "Funeral Home") to GRBA-PSP Investments, LLC (the "Stalking Horse Bidder") for $75,000. The Stalking Horse Bidder agreed to employ the Debtors as funeral directors -- a role they have played for decades -- and permit them to remain living in an apartment on the premises after the closing.

For their part, the Debtors agreed to waive their exemption claims provided the Stalking Horse Bidder actually closed on the sale. Otherwise, the parties agreed that the Trustee would pay the Debtors $50,000 on account of their exemptions from the sale proceeds received from another buyer. *See generally* Motion for Authority to Sell Real and Personal Property at Courtroom Auction Free and Clear of Liens Pursuant to 11 U.S.C. § 363 (the "Sale Motion," ECF No. 393). The net value to the estate derived from selling to the Stalking Horse Bidder, including the credit for the exemptions, would have been $125,000.

The proposal involving the Stalking Horse Bidder was subject to competitive bidding to be conducted through a court room auction, which the court held on November 17, 2015. Because the Trustee is operating the Funeral Home for a limited time pursuant to the unusual

authority under § 721 and the court's prior orders,[1] the court fast-tracked the auction, shortening the notice of the sale hearing from twenty-eight to eighteen days.  *See* Fed. R. Bankr. P. 2002(a)(2) (requiring twenty-eight day notice of proposed sale "unless the court for cause shown shortens the time . . .").

Perhaps to the surprise of the Debtors, the Trustee, and the Stalking Horse Bidder, Mr. Tate Goodwin (as representative of Lighthouse Funeral and Cremation), appeared at the auction and outbid the Stalking Horse Bidder.  At the conclusion of the auction, the court announced its intention to authorize the Trustee to sell the Funeral Home to Mr. Goodwin's company (the "Successful Bidder") for $136,000.

Shortly after the auction, and one day before the entry of the court's Order Approving Motion for Authority to Sell Real and Personal Property at Courtroom Auction Free and Clear of Liens Pursuant to 11 U.S.C. § 363 (the "Sale Order," ECF No. 408), the Debtors filed (and amended) a Motion for Rehearing and an *Ex-Parte* Motion for Order to Continue Courtroom Auction of Spencer Funeral Home (collectively the "Debtors' Motion," ECF Nos. 404, 405 and 406).  The Debtors' Motion recites that another interested bidder -- Hughes Funeral Services, LLC -- is willing to pay $64,000 more than the Successful Bidder, taking into account the Debtors' renewed agreement to waive their exemption claims.

The court conducted a telephonic hearing to consider the Debtors' Motion on December 3, 2015.  The Debtor, the Trustee, the Successful Bidder, and the United States Trustee appeared through counsel, and Hughes Funeral Services, LLC ("HFS") participated in the hearing through non-lawyer representatives (without objection).

---

[1] To preserve the going concern value of the Funeral Home, the court authorized the Trustee to operate the business pursuant to 11 U.S.C. § 721, but only until 11:59 p.m. on December 15, 2015. *See* Order Granting Motion to Renew Limited Operations of Funeral Home Pending Sale as a Going Concern (ECF No. 378).

The parties candidly evaluated the difficult situation in which they find themselves, and offered cogent arguments for and against reopening the auction, and for addressing the Debtors' Motion. The court notes that the Sale Order and the Debtors' Motion were signed and filed, respectively, on the same day, though the Clerk *entered* the Sale Order on the following day. *See* Fed. R. Bankr. P. 9021 (judgment or order is effective upon entry).  Because the Debtors' Motion predates the entry of the Sale Order, it is not the usual motion under Rule 9023 or 9024, although it implicitly seeks reconsideration of the Sale Order.  In some respects, the Debtor's Motion might be regarded as an untimely objection to the Sale Motion, or to the court's decision to shorten notice of the sale hearing, given the tenor of the Debtors' arguments.  It is also possible to see it as a pre-order, good faith effort to improve the outcome of the sale for the Debtors and their creditors alike.  Nevertheless, the court has entered the Sale Order, and the Successful Bidder has relied on it.

Under these unusual circumstances, the court has reviewed the Debtors' Motion through the lens of Rule 9024, while exercising some discretionary latitude in the Debtors' favor given the fortuity of the timing of their motion and the court's order.[2]  For the following reasons, the court will deny the Debtors' Motion.

First, from the uncontested report of counsel, including Debtors' counsel, the Successful Bidder has relied on the Sale Order already, in part by arranging financing and spending funds on an environmental consultant to conduct the usual "phase one" environmental review of the Funeral Home.  With the Trustee's authority to operate the Funeral Home about to expire, and in view of the chemicals likely used in connection with the premises, it was perfectly

---

[2] A party seeking reconsideration must establish a clear error of law, newly discovered evidence that could not have been discovered earlier, an intervening change in controlling law, or the need to prevent manifest injustice. *See In re Solomon*, 436 B.R. 451, 453 (Bankr. W.D. Mich. 2010); *In re Ying Ly*, 350 B.R. 757 (Bankr. W.D. Mich. 2006).

understandable for the Successful Bidder to take such steps promptly after the auction. The court is unwilling to undermine reliance on its orders, especially sale orders, given the mischief that might result in connection with the bankruptcy sale process. *See In re Chung King, Inc.*, 753 F.2d 547, 550 (7th Cir. 1985) (stability in bankruptcy sales generally encourages bidding).

Second, although the Debtors' Motion takes aim at the court's decision to shorten notice of the auction, suggesting that the decision interfered with the ability of HFS to bid, the Debtors certainly should have brought their concerns about the shortened notice to the court's attention at the original sale hearing. For that matter, HFS -- which was present in the courtroom during the auction -- could have identified itself to the Trustee and the court, and requested additional time *before the conclusion of the auction*. Moreover, except for its interest in purchasing the Funeral Home, HFS is a stranger to this proceeding, and not included among the entities presumptively entitled to notice of the sale. *See* Fed. R. Bankr. P. 2002(a). The court will not allow the Debtors, who did have notice of the sale hearing but did not object, to assert the supposed due process rights of HFS.

Third, and perhaps more important, the Trustee was reluctant to embrace the Debtors' Motion out of concern that doing so would subject the estate to litigation with the Successful Bidder. The court shares that concern, particularly given the amorphous form of the agreement between the Successful Bidder and the Trustee regarding the terms of sale (other than those reflected in the Sale Motion). For example, a provision giving the Trustee discretion to back out of the sale at any time before closing would have been helpful here. *Cf. Corporate Assets, Inc. v. Paloian (In re n re GGSI Liquidation, Inc.)*, 368 F.3d 761, 766 (7th Cir. 2004). Without such a provision, even if the Trustee's proffered defenses to any claims by the Successful Bidder would ultimately carry the day, litigation over the issues would likely be costly and wasteful.

The common sense and age-old evaluation of the "bird in the hand" also comes to mind. It is, of course, conceivable that if the court reopens the auction and re-notices the sale, the Stalking Horse Bidder and the (formerly) Successful Bidder may have lost their appetite for the deal, given the delays associated with reopening the auction or for some other reason. It is also possible that the new deal with HFS might fall through for one reason or another, leaving the Trustee without a buyer and without authority to operate the Funeral Home as a going concern.

The court has considered the authorities from the Seventh Circuit that Debtors' counsel cited during the telephone hearing, and is neither bound nor persuaded by them. The *Corporate Assets* case affirmed the trial court's decision to reopen the bidding *before* the lower court entered an order approving the sale, not (as here) after the entry of the order confirming the sale. The *Chung King* ruling reversed the lower court's decision to reopen the sale, principally based on general concerns about protecting the bankruptcy sale process –concerns that the court expressed above.

The circumstances of the Debtors' case, especially the adverse impact on the Successful Bidder who played by the rules, coupled with the court's more general concerns about protecting the sale process, lead the court to deny the Debtors' Motion.

## IV. CONCLUSION AND ORDER

Nothing in today's order is intended to preclude the interested parties from reaching a negotiated settlement, if advisable. Instead, the court is simply expressing its unwillingness to rescind the Sale Order based on the Debtors' Motion and the imminent expiration of the Trustee's authority under § 721. The Trustee remains authorized to sell the Funeral Home to the Successful Bidder as set forth in the Sale Order.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Debtors' Motion (ECF Nos. 404-406) is DENIED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Daniel L. Kraft, Esq., James L. Spoor, Joy E. Spencer-Spoor, Dean E. Rietberg, Esq., Lori L. Purkey, Esq., and all parties requesting notice of the proceedings.

IT IS FURTHER ORDERED that the Trustee's counsel shall promptly serve a copy of this Memorandum of Decision and Order upon the Stalking Horse Bidder, the Successful Bidder, and HFS.

END OF ORDER

**IT IS SO ORDERED.**



**Dated December 6, 2015**

Scott W. Dales
United States Bankruptcy Judge